FILED
DEC 14 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| CHARLES TUMMINO, | 06-CV-955-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| UNITED STATES OF AMERICA, INTERNAL REVENUE SERVICE, | |
| Defendant. | |

ACOSTA, Magistrate Judge

*Introduction*

Plaintiff Charles Tummino ("Tummino") brings this action seeking redetermination of of a federal tax lien by the Internal Revenue Service ("IRS"). The IRS filed a motion for summary judgment on all claims. The court grants the IRS's motion because the IRS has

demonstrated that no genuine issue of material fact exists regarding Tummino's tax liability arising from his promotion of an abusive tax shelter and as to the collectibility of that liability.[1]

*Background*

Tummino operated an insurance and securities business under the name of Charles Tummino & Associates. (Plaintiff's Deposition ("Pl. Depo.") 7.) Tummino is a licensed insurance agent in Oregon. *Id.* at 3. He was licensed to sell securities in Oregon until he reached an agreement with the State of Oregon that in exchange for voluntarily "rescind[ing]" his license, the State would waive a fine that Tummino faced for selling interests in a limited partnership before the State had approved them for sale. *Id.* at 9-10.

Alpha Telecom, Inc. ("Alpha") is an Oregon telecommunications company engaged in the business of installing and maintaining commercial phone systems. (Form 886A 1); *see also S.E.C. v. Alpha Telecom, Inc.*, 187 F. Supp. 2d 1250, 1252 (D. Or. 2002) (discussing Tummino's relationship with Alpha). Alpha also owned and managed approximately 1,800 pay phones. *Id.*

Tummino met Alpha's President, Paul Rubera, when Rubera was installing a phone in Tummino's business. (Pl. Dep. 13.) Sometime in 1997, Tummino approached Rubera with a business idea, suggesting that Alpha sell pay phones to individuals, who would then contract with a phone company such as Alpha to manage those phones. *Id.* at 14-15. Participants in the program would enter into two agreements: (1) a purchase agreement for a pay phone; and (2) a service agreement with Alpha to manage the phone. *Alpha*, 187 F. Supp. 2d at 1255. Although investors were given the choice of using a company other than Alpha to manage the pay phone, approximately ninety percent of investors selected Alpha to service their pay phones. *Id.* Most

---

[1] The parties have consented to jurisdiction by magistrate judge pursuant to 28 U.S.C. § 631(c)(1).

of these investors had no involvement in the operation of the pay phone. *Id.* Alpha selected the location of the pay phone, installed the phone, obtained all certifications from regulatory bodies, maintained and cleaned the pay phones, paid all utility bills, and collected the revenue. *Id.*

Tummino contracted with Alpha to develop a sales force (Pl. Dep. 20) and to market the program. (Form 886A 2); *Alpha*, 187 F. Supp. 2d at 1255. In addition to developing the program, Tummino personally sold pay phones to customers. (Pl. Dep. 44.) Under the terms of the contract between Tummino and Alpha, Tummino was to be paid a commission of 20% for any sales that he made. (Pl. Dep. 19.) During the years 1997 to 2001, Alpha developed, promoted, and sold investments in the pay phone program. (Form 886A 1.) By the time Tummino stopped actively developing the sales force, approximately 500 sales agents were under contract, although many of them were not "out really selling." (Pl. Dep. 38.)

Tummino created materials used by the sales agents and made telephone calls to the agents explaining the program. *Id.* at 39-41. Tummino also fielded calls from accountants of investors. (Form 886A 8); *see also* Defendant's Exhibit ("Def. Ex.") 6. Program materials used to recruit the sales force and customer advertising materials stressed that participation in the program could reduce or eliminate a customer's federal income tax liability. *Id.* Specifically, these materials led investors to believe that the purchase of a pay phone constituted the purchase of a small business, entitling the investor to deductions such as depreciation of business assets under the Internal Revenue Code ("I.R.C.") § 179. *Id.* Additionally, these materials led investors to believe that the payphones qualified for a disabled access tax credit for the cost of the phone under I.R.C. § 44. *Id.* The promotional materials were in print (*see* Def. Ex. 6) and on video. (Form 886A 7). In the video, Tummino makes similar promises of deductions under § 179 and credits under § 44.

In October 1998, American Telecommunications Company, Inc. ("ATC") was created. (Pl. Dep. 22); *Alpha*, 187 F. Supp. 2d at 1255. Tummino operated ATC as the marketing and sales arm of the pay phone program, while Alpha's focus was on obtaining phone sites, installation, service, and management of the phones. *Id.* In 1999, the terms of the contract between Alpha and Tummino were modified to provide Tummino with a commission of 1% of gross sales in the pay phone program. *Id.* at 22. Although Tummino ostensibly was available to assist in presentations under the terms of the modified contract, he acknowledged that he received the 1% commission for "coming up with the idea and getting it started." *Id.* at 23, 34. Overall, Alpha sold approximately 31,000 pay phones resulting in a gross income of $1,437,450 for Tummino. (Def. Ex. 3.)

In July 2001, the United States Securities and Exchange Commission obtained an injunction against further sales of pay phones by Alpha. *Alpha*, 187 F. Supp. 2d at 1263. On August 23, 2004, the IRS assessed a tax-promoter penalty of $1,437,450 against Tummino under I.R.C. § 6700. (Attach. to Notice of Determination 2; Form 886A 1.) The IRS subsequently filed a Notice of Federal Tax Lien pursuant to I.R.C. §§ 6320 and 6330, encumbering Tummino's real property. (Complaint ¶¶ 2-3.) In 2004, Tummino withdrew funds from his IRA retirement accounts. *Id.* at ¶ 27.

Tummino timely requested a Collection Due Process ("CDP") hearing under § 6330 to contest his liability and to propose alternatives to collection. *Id.* at ¶ 4. A CDP hearing was held on March 9, 2006. *Id.* at ¶ 5. As part of the CDP hearing, Tummino made an offer in compromise to the IRS, offering to pay $21,000 in full satisfaction of the penalties assessed against him. (Attach. to Notice of Determination 2.) Tummino based his offer in compromise on doubt as to liability and doubt as to collectibility. *Id.* The IRS rejected Tummino's offer in

Page 4 - OPINION AND ORDER                                                                                          {PLB}

compromise. *Id.* With regard to Tummino's doubt as to liability, the IRS concluded that Tummino was not entitled to contest liability in the CDP hearing and that the proper course was for Tummino to pay fifteen percent of the penalty and to file a tax-refund suit in federal district court. *Id.* As to Tummino's doubts as to collectibility, the IRS required Tummino to provide documentation to establish when Tummino liquidated an IRA and how the proceeds were spent. *Id.* Because Tummino failed to provide sufficient documentation to determine the amount of dissipated assets, the IRS was unable to determine the reasonable collection potential and minimum acceptable offer, resulting in the inability of the IRS to accept Tummino's offer in compromise. *Id.*

Tummino filed a complaint in the United States District Court for the District of Oregon for redetermination of the collection actions. This court stayed the proceedings and remanded the case to the IRS for consideration of the underlying liability. On remand, the IRS sustained the lien filing against Tummino. (Supplemental Notice of Determination 1.) After the stay in this case was lifted, the IRS filed a motion for summary judgement. In his response to the motion, Tummino claimed that the IRS had refused to provide all documents that it had used as a basis for the penalty that it assessed against him. By order, the parties submitted supplemental briefing to the court regarding whether the documents requested by Tummino were subject to review. The IRS included with its memorandum copies of additional documents for review by Tummino. This court then granted Tummino leave to file a revised response to Defendant's Motion for Summary Judgement. *Tummino v. United States*, No. 06-cv-955-AC, slip op. at 9 (D. Or. January 8, 2009). This court now considers the Defendant's motion for summary judgement.

*Legal Standards*

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue of material fact exists where a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has demonstrated the absence of a genuine issue of material fact, the nonmoving party bears the burden of designating specific facts showing that there is a genuine issue for trial. *Id.* at 24. A genuine issue of material fact does not result from a scintilla of evidence or evidence that is merely colorable or not significantly probative. *United Steelworkers of Amer. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir.), *cert. denied*, 493 U.S. 809 (1989). Allegations in the complaint, unsupported conjecture, or conclusory statements are not evidence and are not sufficient to carry the non-moving party's burden. *Hernandez v. Spacelabs Medical, Inc.*, 242 F.3d 1107, 1112 (9th Cir. 2003).

The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). On a motion for summary judgment, evidence is viewed in the light most favorable to the non-moving party. *Universal Health Services, Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004).

*Discussion*

A. Opportunity to respond

Tummino first argues that the IRS summarily asserted the penalty under § 6700 without giving him a reasonable and fair opportunity to respond. This argument lacks legal support on

the facts of this case. "The right of the United States to collect its internal revenue by summary administrative proceedings has long been settled. Where, as here, adequate opportunity is afforded for a later judicial determination of the legal rights, summary proceedings to secure prompt performance of pecuniary obligations to the government have been consistently sustained." *Tavaras v. U.S.*, 491 F.2d 725, 726 (9th Cir. 1974) (quoting *Phillips v. Commissioner of Internal Revenue*, 283 U.S. 589 (1931)). There is no dispute that Tummino received a CDP hearing or, having obtained an unfavorable CDP determination, that he then filed this lawsuit to obtain a judicial determination of his rights. Accordingly, Tummino has received the process established to allow for review and consideration of the IRS's assessment of the penalty against him.

B.  Liability

   1.  *Abusive tax shelter*

Where the validity of the underlying tax liability is properly at issue, the Court will review the matter on a *de novo* basis. *Goza v. C.I.R.*, 114 T.C. 176, 181 (2000) (citing H.R. Conf. Rep. 105-599, at 266 (1998)); *see also Medlock v. United States*, 325 F. Supp. 2d 1064, 1076 (C.D. Cal. 2003). Therefore, this court reviews the question of Tummino's underlying tax liability *de novo*. To establish that Tummino participated in the promotion of an abusive tax shelter, the IRS must prove that he (1) participated in the sale of an investment plan and (2) made or furnished a statement with respect to tax benefits which he knew or had reason to know was false or fraudulent as to a material matter. 68 U.S.C. § 6700(a); *see also U.S. v. Campbell*, 897 F.2d 1317, 1320 (5th Cir. 1990); *U.S. v. Kuan*, 827 F.2d 1144, 1147 (7th Cir. 1987).

Tummino argues that the IRS had not factually established that anything he did promoted an abusive tax shelter. Tummino claims generally that "there are many disputed facts." (Pl.

Mem. ¶ 35.) However, Tummino's arguments dispute the application of the law to the facts rather than the facts themselves. As discussed below, the IRS properly relied on the elements laid out in § 6700(a), and elaborated on by *Campbell* and *Kuan*, in establishing the abusive nature of Tummino's behavior under the statute. Here, the first element of § 6700 is satisfied by Tummino's admission that he contracted with Alpha to develop a sales force and to market the pay phone program.

To satisfy the second element, the IRS must prove that Tummino (1) made or furnished a statement with respect to tax benefits (2) which he knew or had reason to know (3) was false or fraudulent (4) as to a material matter. *Campbell*, 897 F.2d at 1317. First, Tummino made statements with respect to tax benefits in the marketing and training materials that he distributed to sales agents and customers, including a pamphlet and a video. Tummino alleges that after he left Alpha in 1998, Alpha hired a marketing company, SPA, to become Alpha's sole marketing agent. He further alleges that SPA discarded Tummino's marketing materials for the pay phone program in favor of materials developed by SPA. (Pl. Mem. ¶ 13-14.) Tummino, however, has failed to present even a scintilla of evidence to support these allegations.

To oppose summary judgment, Tummino relies exclusively his own conclusory allegations and those of his former attorney. "When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." *Hansen v. U.S.*, 7 F.3d 137, 138 (9th Cir. 1993). As discussed in this court's prior ruling in this case, because Tummino's attorney has simply asserted having personal knowledge of "many" of the facts referred to in Tummino's opposition to summary judgment (Douglas Decl. ¶ 1), this court cannot ascertain which portions of the declaration are based on personal knowledge. Tummino's supplemental briefing on the motion

for summary judgment offers no additional evidence to support his claim that his work was supplanted by that of SPA. Accordingly, this court concludes that the declaration of Tummino's attorney along with Tummino's own unsupported claims are insufficient under Rule 56(e) to oppose summary judgment.

Second, Tummino knew or had reason to know that the statements made were false or fraudulent. Tummino was a sophisticated business person with extensive experience in the sale of securities and insurance. He was aware of the importance of consulting with experts in particular fields when entering into new businesses. This is evidenced by his consultation with an attorney about whether participation in the pay phone program constituted the sale of securities.

Tummino claims that he sought the advice of a tax consultant and relied on the advice of Alpha's accountant with regard to the propriety of the pay phone program, but the record contains no evidence that he conferred with a tax consultant prior to entering into the pay phone program. Instead, Tummino relies only on the conclusory and general statements in his attorney's declaration, which this court already has found to be insufficient to raise a genuine issue of material fact. Tummino's alternative argument in his supplemental briefing, that he did not know or have reason to know that his statements were false because they were based on other literature promoting pay phone services, similarly fails, as he presents insufficient evidence that such literature existed or that he consulted such literature prior making statements concerning the tax benefits of the payphone program.[2] As a result, Tummino has failed to raise a

---

[2] Even if this court accepted Tummino's allegation of reliance on other literature as a basis for his knowledge, or lack thereof, of the tax benefits of pay phone programs, a review of Tummino's claims as to the contents of the "thesis" on which he relies reveal no literature discussing the tax benefits of pay phone programs.

genuine issue of material fact as to whether he knew or should have known that he was supplying false statements about the tax benefits of the pay phone programs.

Third, Tummino has failed to raise a genuine issue of material fact as to whether the statements he made in promotion of the pay phone program were false or fraudulent. In fact, Tummino does not even contest the IRS determination that the deductions and credits that he promised as a part of the pay phone program were not allowable.

Fourth and finally, Tummino's statements made in promotion of the pay phone program were material. A matter is considered material under § 6700 "if it would have a substantial impact on the decision making process of a reasonably prudent investor." *U.S. v. Buttorff*, 761 F.2d 1056, 1062 (5th Cir. 1985) (quoting S. REP. NO. 97-494, at 267 (1982)). In *Buttorff*, the Fifth Circuit held that this test was met where the taxpayer assured customers that the purported tax benefits of the tax shelter were lawful, despite consistent rejection of similar shelters by the courts. *Id.* The taxpayer in *Buttorff* counseled his clients not to seek separate opinions from lawyers or accountants. *Id.* Many of the victims of the tax shelter in *Buttorff* testified that had they known of the IRS's treatment of these shelters, they probably would not have invested in them. *Id.*

In this case, it strains reason to think that the tax shelter component of the pay phone program was not a material consideration to those who enrolled in it. The only evidence in the record on this point is Tummino's acknowledgment that the tax credit is what attracted the customers of the payphone program. Further, the target market for the program is similar to that in *Buttorff*: apparently unsophisticated investors who were not in the business the previous year and to whom the taxpayer gave certain assurances regarding return on investment and taxability. No evidence allows a reasonable inference other than that the tax credit is what interested

customers in the pay phone program and that, as with victims in *Buttorff*, they would have been less likely to invest in the pay phones had they known of the IRS's treatment of the deductions and tax credits promised by Tummino. Thus, the promise of deductions and tax credits as a result of investment in the pay phone program is material.

Accordingly, Tummino has failed to raise a genuine issue of material fact as to any of the elements of the IRS's conclusion that Tummino committed a violation of § 6700.

2. *Penalty*

Tummino also argues that the IRS miscalculated the penalty under § 6700 because it "assumes, without supporting factual basis, that [Tummino] actively promoted all 31,000 sales." (Pl. Mem. ¶ 43.) Any person who "makes or furnishes *or causes another person to make or furnish*" a statement which the person knows or has reason to know is false or fraudulent as to any material matter is subject to the penalty under the statute. § 6700(a)(1)(B) (emphasis added). Tummino does not contest the total number of phone sales made under the program. Nor does he contest the fact that he continued to have a financial interest in the pay phone program after he ceased to actively participate in the program. Furthermore, as discussed earlier, Tummino does not provide sufficient evidence to raise a genuine issue of material fact as to whether Alpha and SPA discarded the marketing and training materials developed by Tummino to market the pay phone program.

Taxpayers who violate § 6700 are subject to "a penalty equal to the $1,000 or, if the person establishes that it is lesser, 100 percent of the gross income derived (or to be derived) by such person from such activity" with respect to "each activity." § 6700(a)(2). Thus, Tummino is subject to the lesser of $31,000,000 (31,000 sales multiplied by $1,000 per sale) or $1,437,450 (the total income derived by Tummino from the pay phone program). Because Tummino fails to

raise a genuine issue of material fact as to whether the IRS properly counted the number of sales as applied to the calculation of the penalty and does not contest the total income derived from the pay phone program, the court will not disturb the IRS's determination that Tummino's liability is $1,437,450.

C.   Collectibility

Where the validity of the underlying tax liability is not at issue, the court will review the administrative determination for abuse of discretion. *Goza*, 114 T.C. at 181 (citing H.R. Conf. Rep. 105-599, at 266 (1998)); *see also Medlock*, 325 F. Supp. 2d at 1076. Having determined the underlying tax liability to be established, the court reviews the question of Tummino's doubts as to collectibility under an abuse of discretion standard. An abuse of discretion is a "'plain error,' namely, 'discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found.'" *Medlock*, 325 F. Supp. 2d at 1076 (citing *Wing v. Asarco, Inc.*, 114 F.3d 986 (9th Cir. 1997)). An abuse of discretion occurs when a decision is based "on an erroneous view of the law or a clearly erroneous assessment of the facts." *Fargo v. Commissioner*, 447 F.3d 706, 709 (9th Cir. 2006) (citations omitted).

Tummino fails to raise a genuine issue of material fact as to whether the IRS abused its discretion by concluding that he had dissipated assets and including those assets in the minimum acceptable offer. The Internal Revenue Manual ("IRM") provides that when the taxpayer can show that assets have been dissipated to provide for necessary living expenses, these amounts should not be included in the reasonable collection potential ("RCP"). I.R.M. 5.8.5.4(4).[3] If the

---

[3] The Secretary of Treasury or his designees may prescribe regulations to carry out the duties and power of the Secretary, including collection of receipts. 31 U.S.C. § 321 (2009). The IRM

Page 12 - OPINION AND ORDER                                                                                              {PLB}

assets have been dissipated with a disregard of the outstanding tax liability, the IRS should consider including the value in the RCP. I.R.M. 5.8.5.4(5). If the taxpayer does not provide information showing the disposition of funds from dissipated assets, the IRS should consider including a portion or all of these values in an acceptable offer amount. I.R.M. 5.8.5.4(6). The IRM further provides that an offer may be returned at any time during processing if the taxpayer fails to provide information necessary to determine whether it should be accepted. 5.8.7.2.2.2(1). Consistent with these provisions, the IRS reasonably requested documents from Tummino pertaining to the disposition of the funds drawn from Tummino's IRA.

Tummino alleges that, contrary to the assertion of the IRS, he provided evidence that the withdrawals from his IRA were not dissipated assets. (Pl. Mem. ¶ 9.) Tummino, however, has not produced copies of any of the information that he alleges he submitted to the IRS for review. Even after Tummino obtained additional discovery, he failed to provide evidence that the withdrawals from his IRA were not dissipated assets. As a result, Tummino fails to raise a genuine issue of material fact as to whether the IRS abused its discretion by concluding that Tummino had dissipated assets and including those assets in the minimum acceptable offer. Therefore, the court will not disturb the IRS's determination of collectibility.

//
//
//
//
//

---

establishes the organization and procedures of the IRS under the authority granted by § 321.

*Conclusion*

The United States' motion for summary judgment (#28) is GRANTED.

DATED this 14th day of December, 2009.

                                        JOHN V. ACOSTA
                                    United States Magistrate Judge